```
              UNITED STATES BANKRUPTCY COURT
             FOR THE NORTHERN DISTRICT OF IOWA
                      WESTERN DIVISION
```

IN RE:

JEFFREY LEE LUNDEEN                                Chapter 13
MELISSA ANN LUNDEEN

    Debtors.                           Bankruptcy No. 05-03980S


MEMORANDUM DECISION RE: MOTION TO MODIFY PLAN

Jeffrey and Melissa Lundeen move to modify their chapter 13 plan after confirmation. Carol F. Dunbar, the standing trustee, does not object, nor does any other party-in-interest. Nonetheless, the court held hearing on the motion on November 12, 2008 in Sioux City. Wil L. Forker appeared as attorney on behalf of Lundeens. Carol F. Dunbar appeared on her own behalf. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

Lundeens filed their chapter 13 petition on August 19, 2005. Although from Nebraska, Lundeens have also filed two prior bankruptcy cases in this district. They filed a joint chapter 7 case in 1991, and received their discharges. In 2004, they filed a joint chapter 7 case and received discharges on April 27, 2005.

In the pending case, they filed a chapter 13 plan on September 15, 2005 (doc. 10). At filing, their anticipated disposable income, derived from schedules I and J, was $159.26 per month (doc. 1). At the time, Melissa had been employed for nine years by Security Land Title in South Sioux City, Nebraska. Jeffrey was employed as a laborer for HCI Construction, also in South Sioux City. Lundeens amended their schedule J at the time they filed their plan, increasing their monthly expenses, and

estimating their disposable income at $59.26 per month (doc. 9). Their initial plan proposed monthly payments of $57.26 to the trustee for 36 months (doc. 10). The trustee objected to the plan because Lundeens were not paying into the plan the full extent of their projected disposable income (doc. 15).

Lundeens filed a modified plan on November 8, 2005, proposing to pay $59.26 per month for 36 months (doc. 18). The trustee again objected (doc. 27). The court denied confirmation (doc. 31).

Lundeens filed a "Second Amended Plan" extending the plan term to 60 months (doc. 28). On January 19, 2006, Lundeens amended their schedules I and J (doc. 36), and they filed a "third" modified plan (doc. 37). They reduced their projected monthly income and reduced their monthly expenses, resulting in a small net increase in monthly disposable income. They reduced the plan period to 36 months. Their modified plan treated $171.78 already paid to the trustee as the equivalent of three months of plan payments at $57.26 per month. For the remaining 33 months, they proposed to submit $61.59 to the trustee (doc. 37).

The trustee filed a "Report of No Objection to Confirmation" on February 17, 2006 (doc. 40). Unsecured creditors Christina and Augustine Ramirez objected to the plan (doc. 41). Thereafter, Lundeens were granted time to file a further modification.

On April 25, 2006, Lundeens filed amended schedules I and J.

These schedules increase projected monthly income and expenses, and showed excess income of $61.47 per month (doc. 55). The accompanying plan ("Fourth Amended Plan") showed seven previous monthly payments to the trustee totaling $412.56, and it proposed 29 remaining monthly payments of $61.47 for total payments of $2,195.19 "plus any disposable income of any kind" (doc. 56).

The trustee objected to confirmation (doc. 62). After considering evidence introduced at the confirmation hearing, the court denied confirmation on two grounds: that the debtors did not propose to submit all projected disposable income during the term of the plan and that the plan discriminated in its treatment of unsecured creditors (doc. 65). The court learned at the hearing that Lundeens had received $5,420.00 in tax refunds prior to the hearing and that they had failed to turn the money over to the trustee. They spent some of the refunds. There remained $4,303.00 in refunds which debtors agreed to turn over. A payment of rent from the refund was approved because Mr. Lundeen had been laid off at the time. Their payment of $500.00 to their attorney without court approval was ordered returned and paid to the trustee. The court granted Lundeens' request for time to file a modified plan.

On June 15, 2006, Lundeens filed a "Fifth Amended Plan" (doc. 69). Lundeens showed nine previous monthly payments to the trustee totaling $540.56 plus their submission of their tax refund in the amount of $4,803.00. They proposed 27 future payments of $316.34 and two future payments of $254.87, "plus any

3

disposable income of any kind received during the period of the plan...." (doc. 69, ¶ 2). No one objected, and on July 7, 2006, the court confirmed their plan (doc. 73).

On August 20, 2008, the trustee filed a status report in which she notified the court that she had not received from debtors their 2007 stimulus tax rebate or their 2007 tax refunds, if any (doc. 85). She stated that if she did not receive the documents, she would file a motion to dismiss.

No doubt in response to the trustee's report, Lundeens filed a Motion to Modify their confirmed plan (doc. 87). In their motion, debtors admitted that for 2007 they had received tax refunds and a stimulus tax rebate both totaling $3,194.60. They said they spent the refunds because of Melissa's job loss and increased expenses. For their modification, they ask that they not be required to turn over the refunds. They admit that their motion is after the fact, but state that their former attorney "refused to modify the plan" when debtors began having financial difficulties.

The trustee does not object to the modification. She says the Lundeens still must pay $175.78 to be current in their monthly payments through the end of October and that the plan is scheduled to be completed with the November 2008 payment. To complete all monthly payments, Lundeens would need to pay $430.65.

Melissa lost her job with Security Land Title in September 2007. At the time, she had take-home pay of approximately

4

$600.00 every two weeks.  When she lost her job, Lundeens lost their health insurance through her employer.  Jeffrey began paying for health insurance through his employer.  In October 2007, Melissa began receiving unemployment compensation from the State of Nebraska.  After withholding for taxes, she received $243.00 per week.  The unemployment benefits lasted 13 weeks.  The unemployment payments later resumed for an additional 13 weeks but ceased about one week before hearing.

Melissa looked for employment but was not successful.  On July 16, 2008, the couple had a baby.  There are now six persons in the family--Mr. and Mrs. Lundeen, children aged 18, 10, and 9 years, and their infant child.  Since the baby was born, Melissa has sought employment but has not obtained it.  The couple considers that most jobs would not pay enough to make them financially worthwhile because of transportation and daycare expenses.

Lundeens received their federal tax refund in April 2008 in the net amount of $1,394.60.  They received an economic stimulus tax rebate of $1,800.00 in May or June 2008.  As previously stated, the two refunds total $3,194.60.

Lundeens understood they were required to turn the money over to the trustee as additional disposable income under their plan.  They said they contacted their then-attorney, Craig Lane to notify him that Melissa had lost her job.  He advised against modification at that time saying that Melissa should wait to see if she found employment.  Then when they received the tax

5

refunds, they unsuccessfully tried to contact Lane to discuss what action to take, but they said he did not return their calls. They began using the money to pay bills in May or June 2008.

Lundeens retained Mr. Forker to represent them. Thereafter, they filed the present motion to modify. The modification would eliminate the requirement that they pay the 2007 tax refund and stimulus rebate to the trustee. If approved, they would make their remaining plan payment in November and likely be entitled to receive their discharges.

Dunbar does not object. She says the use of the tax refunds was necessary for the welfare of the family.

It is tempting to agree that the debtors needed to use the refunds because of the lost income. Their testimony shows that 26 weeks of unemployment compensation was not enough to offset the loss of Melissa's income even if their expenses did not increase. Thus, as the trustee does, one might consider that it is appropriate under these past circumstances to excuse the requirement that Lundeens turn over the 2007 tax refunds.

But that's the problem. We are dealing with past circumstances. The job loss took place more than one year before the motion to modify. Lundeens did not receive the tax refund until April 2008 or the stimulus rebate until May or June 2008. They began using the money almost immediately. It was not until the refunds were spent that they sought a modification to excuse their unauthorized use. Creditors are entitled to advance notice of the debtors' access to the funds, when they can better assess

the debtors' need--through proof of actual income and expenses. Approval after the fact rewards debtors for ignoring their plan requirements. In this case, it would sanction the barest explanation--job loss--but without any proof of the details.

Lundeens seek to excuse the delay in their motion. They blame their former attorney for advising them to wait on modification to see if Melissa obtained employment. Also, they say he did not return their later calls. But they do not say that he advised them that they could use the tax refunds to pay bills without court permission. And, even if the advice given them was not the best regarding modification, they remain responsible for failing to seek modification in advance of the use of the refunds.

I decline to excuse Lundeens' failure to turn over the refunds. I do so because they failed to seek their plan modification in advance of spending the refunds.

They are not without a remedy. They can extend their plan period to pay the amount of the refunds to the trustee over time. Their plan contemplated that nearly all of the 2008 tax year would be included in the plan period. They have received tax refunds for the 2005, 2006, and 2007 tax years. They would likely receive one for 2008. That would aid their ability to pay the trustee the 2007 refunds. But they will not now be rewarded by the court excusing their use of the projected disposable income without creditors having the opportunity to object before the money was spent.

7

IT IS ORDERED that the motion to modify is denied.  Judgment will enter accordingly.

DATED AND ENTERED  December 12, 2008

*/s/ W. L. Edmonds*

William L. Edmonds, Bankruptcy Judge

8